IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-174-FL

| | |
|---|---|
| NADIE JONES, JR., ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-29, DE-30] pursuant to Fed. R. Civ. P. 12(c). Claimant Nadie Jones, Jr. ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant filed an application for a period of disability, DIB and SSI on 3 October 2008, alleging disability beginning 30 July 2007. (R. 9). His claims were denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on 30 June 2010, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and

testified. (R. 19-48). On 30 July 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 6-18). On 11 February 2011, the Appeals Council denied Claimant's request for review. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(2), 416.920a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of a

consulting physician's opinion;[1] (2) improper assessment of Claimant's credibility and (3) improper assessment of Claimant's residual functional capacity ("RFC"). Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 3, 7.

## FACTUAL HISTORY

### I. ALJ's Findings

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[2] requiring no exposure to concentrated exposure to hazards and humidity that has the following physical limitations: sit/stand option, occasional climbing, balancing, stooping, kneeling, crouching or crawling, frequent bilateral fingering and handling, no repetitive overhead reaching. (R. 12). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 15).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 16). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the

---

[1] Claimant does not expressly assign error to the ALJ's treatment of an opinion by a state agency consultative examiner. Rather, in assigning error to the ALJ's credibility and RFC determinations, Claimant relies on the consulting physician's opinion which Claimant contends is "consistent with medical evidence." Pl.'s Mem. at 7. Accordingly, the court considers the ALJ's treatment of this opinion evidence as a third assignment of error.

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

demands of other employment opportunities that exist in significant numbers in the national economy. (R. 17).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was forty-four years old and unemployed. (R. 25). Claimant completed high school but has no further educational training. (R. 26). Claimant was last employed with Perdue Farms in the "picking department;" however, he stopped working because he could no longer physically perform the job. (R. 26-27). Claimant's past work experience also includes forklift operator, "broiler cook" and maintenance supervisor. (R. 27).

Claimant explained numerous medical conditions support his disability claim and his inability to work full-time. These medical conditions include back pain, knee pain and hand swelling attributed to arthritis, sleep apnea and bipolar depression. (R. 28, 30-31, 34-35). Claimant has suffered from chronic back pain for over 10 years for which he takes pain medication and has undergone physical therapy and steroid injections. (R. 28). Claimant testified that he can function thanks to medication and injections but is always in pain. (R. 29). Claimant's back pain is exacerbated by too much activity or remaining "still for too long." (R. 30). In discussing his knee pain, Claimant testified to undergoing physical therapy and using a cane prescribed by his treating physician. (R. 30). Claimant attributed improvement in his sleep apnea symptoms, including dizziness and headaches, to a CPAP machine. (R. 31). Claimant testified that arthritis in his hands causes stiffness, cramping and swelling. (R. 34).

Claimant testified that he has been diagnosed with bipolar depression and was suicidal at one point. (R. 35). Claimant testified that his mood changes, experienced every two weeks, are not as severe thanks to medication. (R. 36). Claimant testified further to suffering from "disassociation,"

5

which he described as an experience similar to short-term memory loss, and to hearing voices. (R. 37-38). Claimant also testified to suffering from a drug-induced stroke when he was 22 and to the continued use of cocaine, with the most recent use occurring a "few months" prior to the administrative hearing. (R. 31-32). Claimant testified that he is not capable of sitting or standing for more than fifteen minutes at a time or lifting more than five pounds and has difficulty bending or stooping, buttoning shirts and handling small items. (R. 32-33, 40). Claimant testified to falling twice a week in his home despite his reliance on the cane. (R. 39-40). Claimant's activities of daily living include preparing his meals, watching television, using the computer and napping. (R. 33). Claimant attributed his napping to drowsiness caused by his medications, which he testified "keep [him] . . . [in] a haze" and turn him into "a complete zombie." (R. 33, 37, 39). Claimant also plays with his grandchildren. (R. 34).

### III. Vocational Expert's Testimony at the Administrative Hearing

Sandra Wells-Brown testified as a VE at the administrative hearing. After the VE's testimony regarding Claimant's past work experience (R. 42), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed the following hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to perform light work with nonexertional limitations that include no repetitive reaching overhead, no more than frequent handling and fingering and occasional climbing, balancing, stooping, kneeling, crouching an falling and no working in environments subject to heat, hazards and humidity. (R. 42). The VE responded in the negative but testified the individual could perform other representative jobs such as merchandise marker (DOT #209.587-034), cashier (DOT #211.462-010) and sales attendant (DOT

#299.677-010). (R. 43). Next, the ALJ asked whether these positions would be available if the hypothetical individual was limited further to a sit/stand option. (R. 43). The VE testified only the position of cashier would accommodate such a limitation but testified other light work positions existed, such as counter attendant (DOT# 311.477-014) and assembly (DOT# 723.684-018). (R. 44). Third, the ALJ asked the VE whether any sedentary positions would be available for an individual with the same nonexertional limitations described above who required a sit/stand option. (R. 44). The VE testified in the affirmative, listing the following representative occupations: scanner (DOT #249.587-018); assembly (DOT # 739.687-030); and addresser (DOT #209.587-010). (R. 44).

Finally, the ALJ inquired whether any of the representative sedentary or light positions accommodating the sit/stand option would remain available if the individual was further limited to occasional contact with both coworkers and the public and routine repetitive tasks with only routine changes. (R. 45). The VE testified all sedentary positions remain available but only the light work position of assembly would accommodate the sit/stand option and the occasional contact and routine work limitations. (R. 45). When asked by Claimant's counsel whether limitations of standing or walking less than two hours in an eight-hour day, the use of a cane, no stooping or bending and no repetitive grasping, reaching or handling would change the VE's testimony regarding the available sedentary position, the VE responded in the affirmative, stating such limitations "would be less than sedentary." (R. 46). The VE testified that her testimony was consistent with the DOT with the exception of the sit/stand option which it does not address. (R. 44).

## DISCUSSION

### I. The ALJ did not err in evaluating the opinion of a state agency medical consultant.

In contending the opinion of state agency medical consultant, Bolling Feild, M.D., is "consistent with the medical evidence," Claimant implies the ALJ erred in according minimal weight thereto. Pl.'s Mem. at 7. Claimant provides no discussion in support of this contention.

"Findings of fact made by State agency . . . consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the [ALJ] and Appeals Council levels of administrative review." S.S.R. 96-6p, 1996 SSR LEXIS 3, at *1, 1996 WL 374180, at *1. Moreover, when considering the findings of state agency consultants, the ALJ must

> evaluate the findings using relevant factors . . . , such as the [consultant's] medical specialty and expertise in [the Social Security Administration's] rules, the supporting evidence in the case record, supporting explanations provided by the [consultant], and any other factors relevant to the weighing of the opinions.

20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). The ALJ must explain the weight given to these opinions in his decision. *Id.*; *see also* S.S.R. 96-6p, 1996 SSR LEXIS 3, at *5, 1996 WL 374180, at *1. An ALJ is under no obligation to accept any medical opinion. *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

The medical opinion at issue occurred in a report dated 9 February 2009 wherein Dr. Feild, upon evaluating Claimant's back and knee pain, opined that Claimant could be expected to stand and

8

walk less than 2 hours in an 8-hour workday, requires a cane to assist with ambulation, cannot lift or carry weights and cannot bend or stoop. (R. 270). Dr. Feild indicated further that Claimant was capable of reaching, handling and grasping simple items so long as this was not done repetitively or with heavy weights. (R. 271). The ALJ, upon summarizing Dr. Feild's opinion, assigned minimal weight thereto and explained the rationale for said weight. In particular, the ALJ noted the opinion was (1) "inconsistent with and [un]supported by the longitudinal evidence of record" and (2) "rendered pursuant to a one-time examination, in which Dr. Feild did not have access to the objective medical evidence." (R. 16).

In making this assessment, the ALJ noted that with respect to Claimant's lumbar spine and knee conditions, physical examinations revealed Claimant's motor strength, reflexes and sensation were generally intact, no evidence of neurological deficits, good range of motion of the hips, knees and ankles and the ability to perform heel and toe walk. (R. 13-15, 269, 328, 332-33, 338, 346, 352, 357, 368, 372, 374, 380, 384, 406-09, 421). While acknowledging Claimant's reliance on a cane when outside of his home, the ALJ noted an assistive device had never been prescribed for Claimant. (R. 15). The ALJ noted also that Nadine Skinner, M.D., Claimant's primary care provider, observed Claimant walking without difficulty in the office parking lot despite complaints of back and knee pain. (R. 15, 368). Also, the ALJ relied on the fact that Dr. Feild's opinion was inconsistent with those of David C. Miller, M.D., Claimant's orthopaedic specialist, and David Williams, M.D., and Pamela Jessup, M.D., state agency non-examining consultants. (R. 16). For example, Dr. Miller stated only that Claimant could perform "no heavy lifting" while Drs. Williams and Jessup both opined that Claimant was capable of lifting and carrying up to twenty pounds occasionally and ten pounds frequently. (R. 16, 294, 301, 407). Also, Drs. William and Jessup found Claimant capable

9

of sitting, standing or walking for up to six hours in an eight-hour work day. (R. 294, 301). As the ALJ observed, Dr. Feild acknowledged having no access to "any laboratory testing" or "any medical information about [Claimant]." (R. 270). Such statements cannot be reconciled with Dr. Feild's finding that Claimant's statements and portrayal of symptoms "were consistent" with "the medical signs and laboratory findings" and "the medical history and treatment." *Id.*

The absence of a sufficient rationale for the opinion of Dr. Feild and the inconsistency between his opinion and other medical evidence in the record reasonably downgraded the true evidentiary value of his opinion. The ALJ thoroughly summarized Dr. Feild's opinion, assigned a weight thereto and explained the rationale for said weight. Accordingly, Claimant's argument as to this issue is without merit.

## II. The ALJ properly assessed Claimant's credibility.

Claimant contends the ALJ improperly evaluated his credibility. Pl.'s Mem. at 10. Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the

10

location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3.

At the outset, the court observes Claimant's credibility argument is limited to the ALJ's consideration of Claimant's physical limitations. In particular, Claimant's contends his testimony as to such limitations is entitled to great weight as it is consistent with Dr. Feild's opinion. Pl.'s Mem. at 10-11. As explained above, the ALJ's decision to accord minimal weight to Dr. Feild's opinion is supported by substantial evidence. Claimant does not, however, fault the ALJ for failing to evaluate Claimant's credibility in accordance with S.S.R. 96-7p and a review of the ALJ's decision indicates his credibility analysis was proper. The ALJ considered Claimant's numerous subjective complaints associated with his severe impairments, including his back and knee pain, headaches, dizziness, swelling and cramping in his hands, mood changes and concentration difficulties. (R. 13). The ALJ found that Claimant had medically determinable impairments reasonably capable of causing Claimant's subjective symptoms but concluded Claimant's subjective complaints were not fully credible. *Id.* In reaching this conclusion, the ALJ discussed at length medical records concerning Claimant's lumbar spine and knee conditions, GERD, sleep apnea and mental impairments. (R. 13-

15).

With respect to Claimant's lumbar spine and knee conditions, the ALJ noted the following: (1) treatment records revealed Claimant's motor strength, reflexes and sensation were generally intact and no neurological deficits (R. 269, 328, 332-33, 338, 346, 352, 357, 368, 372, 374, 380, 384, 406-09, 421); and (2) Claimant's treatment has been conservative, consisting primarily of pain medications and injections, from which Claimant obtained pain relief (R. 397, 402, 406-07). (R. 15); *see Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); *Farrior v. Astrue*, No. 7:10-CV-164-FL, 2011 U.S. Dist. LEXIS 81863, at *14, 2011 WL 3157150, at *5 (E.D.N.C. July 26, 2011) (holding an ALJ may consider the type of treatment received in evaluating a claimant's subjective complaints). The ALJ noted further that Claimant failed to complete the physical therapy prescribed to treat his back and knee pain. (R. 15, 317, 324-25); *see Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (noting "an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility"). With respect to Claimant's remaining impairments, the ALJ noted Claimant's sleep apnea and GERD have been treated with the CPAP machine and medication, respectively, without complication or the necessity for surgical intervention, and that symptoms associated with Claimant's mental health problems have improved with medication. (R. 14-15, 361, 402, 426-27).

The ALJ also found that Claimant's activities of daily living were inconsistent with his allegations of disabling pain. *See Mickles*, 29 F.3d at 921 (stating "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life"). Such activities include fixing breakfast, reading, watching television, using a computer, performing some sweeping

and taking out light trash, taking daily walks and assisting his grandchildren with homework. (R. 15, 206-09, 427); *see Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (noting that claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints). The ALJ relied also on Dr. Skinner's observation that despite Claimant's complaints of pain, Claimant walked without difficulty in the office parking lot. (R. 15, 368).

It is within the ALJ's province to determine credibility and, in fulfilling that function, the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence of record. *See Mickles*, 29 F.3d at 929 ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). To the extent that the ALJ detailed the relevant facts underlying his finding that Claimant's testimony was not fully credible, his credibility finding is entitled to substantial deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Here, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. While Claimant may disagree with the manner in which the ALJ took account of this evidence, this court cannot re-weigh the evidence. *See Mastro*, 270 F.3d at 176. For the foregoing reasons, Claimant's argument as to this issue is without merit.

### III. The ALJ's RFC is supported by substantial evidence.

Claimant contends the ALJ erred in finding Claimant retained the RFC to perform light work. Pl.'s Mem. at 7. An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1),

416.945(a)(1); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *5, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *14, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *21, 1996 WL 374184, at *7. Furthermore, the RFC assessment must "consider and address medical source opinions," and if it "conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7.

The ALJ's decision indicates that he considered Claimant's mental and physical impairments in totality before determining Claimant maintained the RFC to perform light work. As described earlier, the ALJ's opinion provides a detailed review of Claimant's medical records, citing medical facts and underlying evidence as to each impairment. In addition, the RFC assessment takes account of Claimant's testimony concerning pain to the extent that this testimony proved consistent with the objective medical evidence before the ALJ. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting the ALJ need not accept Claimant's subjective evidence to the extent it is inconsistent

with the available evidence). Moreover, while state agency consultants found Claimant had no manipulative or environmental limitations, the ALJ disagreed, finding Claimant limited to frequent handling and fingering and no repetitive overhead reaching and that Claimant must avoid concentrated exposure to hazards and humidity. (R. 16, 295-96, 303-04). Also, the ALJ's RFC assessment includes consideration of opinions by Drs. Miller and Feild and explanations for the adoption of Dr. Miller's opinion but not that of Dr. Feild. (R. 16). While Claimant contends the RFC finding is not supported by substantial evidence based on an erroneous evaluation of Dr. Feild's opinion and Claimant's credibility, as detailed above, the court finds the ALJ's consideration of both was proper.

Based on the foregoing, this court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-29] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-30] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected

to, and accepted by, the District Court.

This, the 27th day of February, 2011.

                                                      _____
                                                      Robert B. Jones, Jr.
                                                      United States Magistrate Judge